**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 12, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUSTIN SPARKS,

Defendant - Appellant.

No. 09-5037

(N.D. Oklahoma)

(D.C. No. 4:07-CR-00065-TCK-3)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **BALDOCK**, and **BRORBY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Defendant and appellant Justin Sparks pled guilty to one count of

conspiracy with intent to distribute and to distribute more than 100 kilograms of

marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(viii).

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Mr. Sparks subsequently filed a motion to withdraw his guilty plea, which the district court denied following an evidentiary hearing. The court sentenced Mr. Sparks to 210 months' imprisonment, followed by five years of supervised release. This appeal followed.

## BACKGROUND

On August 10, 2007, Mr. Sparks was charged in a superceding indictment with one count of conspiracy to possess with intent to distribute and to distribute more than 100 kilograms of marijuana. In February 2008, Allen M. Smallwood entered his appearance as retained counsel for Mr. Sparks. After initially pleading not guilty and giving every indication that he was preparing for trial, Mr. Sparks pled guilty right before trial was scheduled to commence, on April 7, 2008, when he learned of a new government witness.

In connection with that guilty plea, Mr. Sparks filed a "Petition to Enter a Plea of Guilty." Petition, R. Supp. Vol. 1 at 28. In that petition, he acknowledged that he had received a copy of the charging document, that he had discussed the charges and surrounding facts and circumstances with his attorney, and that he had been advised of all defenses. He also acknowledged that he had been advised of his right to a jury trial and the right to see, hear and confront any witnesses against him. Id.

The petition further explicitly noted that Mr. Sparks faced a mandatory minimum sentence of five years, and that his sentence could be as high as forty years. The petition also stated:

> I offer my plea of "GUILTY" freely and voluntarily, and further state that my plea of "GUILTY" is not the result of any force or threats against me, or of any promises made to me other than those noted in this petition. I further offer my plea of "GUILTY" with full understanding of all the matters set forth in the Indictment/ Information and in this petition, and in the certificate of my attorney which is attached to this petition.

Id. at 30. Mr. Sparks acknowledged in the petition that he had been advised about the United States Sentencing Commission, Guidelines Manual ("USSG"), and that "sentencing is a matter left exclusively in the province of the Court after a review of all relevant facts." Id. Immediately above Mr. Sparks' signature, the petition stated, "I swear that I have read, understood, and discussed with my attorney, each and every part of this Petition to Plead Guilty, and that the answers which appear in every part of this petition are true and correct." Id. at 31. Mr. Sparks signed the petition under oath, in open court, during the change of plea proceedings.

Furthermore, at the change of plea proceedings, the district court engaged in the following colloquy with Mr. Sparks:

THE COURT:               It's my understanding you wish to withdraw your plea of not guilty as to Count One and enter a plea of guilty; is that correct?

THE DEFENDANT:     Yes, sir.

THE COURT:                  Would your – has [your attorney] explained
                            to you about your right of trial by jury?

THE DEFENDANT:              Yes, sir.

THE COURT:                  You have the right of trial by jury, you have
                            the right of assistance of your attorney at
                            such trial; do you understand that?

THE DEFENDANT:              Yes, sir.

THE COURT:                  Also, you have the right to confront,
                            examine, cross examine witnesses that
                            would appear at the trial and the right not to
                            be compelled to incriminate yourself at
                            such trial; you realize that?

THE DEFENDANT:              Yes, Your Honor.

Tr. of Change of Plea Proceedings, R. Vol. 2 at 27.

The district court then explained the consequences of waiving his right to a

trial by jury, and Mr. Sparks indicated he understood those consequences,

including the applicability of the advisory Guidelines.  After ensuring that

Mr. Sparks had consulted appropriately with his counsel, the court approved his

waiver of a jury trial.

Next, the court read the charges to Mr. Sparks and advised him that the

minimum penalty would be no less than five years, with the maximum as much as

forty years' imprisonment.  The court reviewed Mr. Sparks' petition to enter a

guilty plea and asked if he had reviewed it carefully with his attorney, which

Mr. Sparks confirmed they had.  The court reviewed the factual basis for the

guilty plea, as stated in the petition, and Mr. Sparks acknowledged its accuracy. Specifically, Mr. Sparks acknowledged that between April of 2006 and February of 2007 he had caused a co-conspirator to transport at least 100 kilograms of marijuana to Pennsylvania, by way of Oklahoma. Mr. Sparks agreed, however, that the court would ultimately determine the amount of marijuana involved and "will take into consideration such conduct as the Court finds would be appropriate for sentencing purposes." Id. at 36.

Finally, the court inquired of Mr. Sparks whether he was "under the influence of any liquor, medication, anything that might in any way affect [his] ability to fully understand and fully participate in this proceeding," to which Mr. Sparks responded he was not. Mr. Sparks then pled guilty, under oath, to conspiring to have a hundred kilograms of marijuana transported from Arizona to Pennsylvania, by way of Oklahoma. Id. at 39. After accepting Mr. Sparks' guilty plea, the district court referred the matter to the United States Probation Office for preparation of a presentence report ("PSR") for sentencing purposes.

The PSR ultimately recommended holding Mr. Sparks responsible for 877 kilograms of marijuana, which resulted in a base offense level under the Guidelines of 30. The PSR further increased Mr. Sparks' base offense level by four because he was a leader/organizer, and then two more levels because he attempted to obstruct justice by paying his girlfriend, Melissa Oliveras, $5,000 to keep quiet about his involvement with drugs. With a criminal history category of

I, the PSR calculated an advisory Guidelines sentencing range of 188 to 235 months.

On August 19, 2008, after he received a copy of the PSR and after he had pled guilty, but prior to his sentencing, Mr. Sparks filed a *pro se* motion to withdraw his guilty plea, arguing that (1) his guilty plea was "tendered by use of subversion"; (2) his plea was "made without sufficient deliberation"; (3) his plea was "involuntarily made without proper advice and a full understanding of the consequences"; and (4) he received ineffective assistance of counsel. *Pro Se* Motion, R. Vol. 1 at 109-10. Mr. Smallwood filed a motion to withdraw as counsel, which the court granted. The court then appointed James Fatigante as substitute counsel, but denied Mr. Sparks' request to find that Mr. Smallwood had rendered ineffective assistance.

On March 2, 2009, Mr. Fatigante filed an amended motion to withdraw Mr. Sparks' guilty plea. He also filed objections to the PSR, objecting to the quantity of marijuana attributed to Mr. Sparks and to the application of the leader/organizer enhancement and the obstruction of justice enhancement.

On March 9 and 11, 2009, the district court held an evidentiary hearing on both of Mr. Sparks' motions to withdraw his guilty plea, followed by a hearing on sentencing. Mr. Fatigante represented Mr. Sparks at the hearing, at which both Mr. Sparks and Mr. Smallwood testified regarding the motion to withdraw the guilty plea. Others testified regarding sentencing issues.

-6-

Mr. Smallwood testified that he had been practicing law in Oklahoma since 1975 and that 97 to 98 percent of his practice was criminal defense. He explained that he had been retained to represent Mr. Sparks in mid-January of 2008. Mr. Smallwood further testified that he and Mr. Sparks had discussed "[m]any times" the question of "going to trial versus entering a plea prior to the case being called for trial." Tr. of Proceedings at 6, R. Vol. 2 at 49. Mr. Smallwood stated that Mr. Sparks "wanted to contest the allegations . . . and that was pretty much what he had his mind set on from the beginning." Id. at 50.

Mr. Smallwood said that he and Mr. Sparks had discussed a possible plea and the effect of the Guidelines, and that the relationship between the two was somewhat strained at times as they prepared for trial. Mr. Sparks and Mr. Smallwood disagreed about various strategic aspects of the case. Mr. Smallwood testified, however, that as of the day before trial was scheduled (April 6, 2008), they both thought that they "were going to trial." Id. at 55.

On the day of the trial, however, when Mr. Smallwood arrived at the courthouse, government counsel informed him that Mr. Sparks' girlfriend, Melissa Oliveras, was going to testify at trial. Furthermore, Mr. Smallwood received government witness statements indicating that her testimony would be "contrary to the discovery [he] had on her with respect to what her testimony would be." Id. at 57. In particular, government counsel told Mr. Smallwood that Ms. Oliveras would testify as to "marijuana trips and cocaine trips . . . [and] the

use of a firearm and threats to her safety and her person . . .[and] physical assaults . . . by Mr. Sparks on Ms. Oliveras." Id. at 64.

Mr. Smallwood discussed this development with Mr. Sparks, and the district court gave them a little bit of additional time, prior to the start of trial, to decide what course of action to take. Mr. Smallwood testified that he "told [Mr. Sparks] that if [Ms. Oliveras's] testimony is believed, it's going to be extremely difficult [for Mr. Sparks] to be successful in this trial." Id. at 65. He further stated that the "bottom line is, if she came off as a good-faith credible witness and could explain the discrepancies in her testimony, . . . it was going to be a very powerful piece of evidence against him." Id. at 66. Mr. Smallwood also testified that Mr. Sparks was "emotional" and "visibly affected" by this turn of events. Id. at 59.

After discussing with Mr. Sparks the impact of Ms. Oliveras's testimony, Mr. Smallwood advised government counsel that Mr. Sparks was interested in entering a plea. The parties agreed on a plea that would limit the quantity of drugs Mr. Sparks pled guilty to possessing, but leaving the exact quantities to sentencing. As a result, Mr. Sparks signed the petition to enter a guilty plea, described above. Mr. Smallwood stated that he went over the petition with Mr. Sparks and answered his questions concerning the petition. He testified that Mr. Sparks indicated that all the averments in the petition were "truthful and correct," and he never insisted that "he was actually innocent of the offense." Id.

at 70.  Thus, as Mr. Smallwood summed it up, Mr. Sparks entered his guilty plea "freely and voluntarily, but very reluctantly."  Id. at 71.  Finally, Mr. Smallwood testified that, although he discussed with Mr. Sparks the possibility of filing a motion to withdraw the guilty plea, Mr. Sparks never, in fact, asked him to file that motion.

By contrast, Mr. Sparks testified that he and Mr. Smallwood disagreed about whether he should plead guilty.  Mr. Sparks testified that, prior to April 7, 2008, the day the guilty plea was entered, he had never told Mr. Smallwood that he was guilty or that he was interested in pleading guilty.  Mr. Sparks stated that, on April 7, 2008, "about ten minutes before trial," he was told of Ms. Oliveras's potential testimony.  Id. at 80.  This information made him "emotionally distraught[,] [c]loud-minded[,] . . . real upset[,] confused."  Id. at 81.  He further stated that he "felt like [he] was forced into the plea agreement"; that Mr. Smallwood "used [his] daughter against [him]" by saying that "if [he] didn't plead guilty . . . [he] wouldn't see her and . . . wouldn't see her graduate."  Id. at 82.  Mr. Sparks further asserted that he had not read the plea petition in full before going into court to enter his guilty plea, and that he could "barely see" the petition because he was "crying and shaking."  Id. at 84.  Mr. Sparks testified that he pled guilty because he was "scared and intimidated" by the district court judge; that he lied when he made the admissions he made under oath at the hearing, and

that he lied when he pled guilty. He further stated that he was innocent of the charges against him.

Mr. Sparks then testified that he first asked Mr. Smallwood about withdrawing his guilty plea the day after he pled guilty. He averred that, when he told Mr. Smallwood that he wanted to withdraw his guilty plea, Mr. Smallwood told him he "couldn't do it." Id. at 86. He further stated that when he learned some two months later that he could file a motion to withdraw his guilty plea, he did so *pro se* four months after his guilty plea.

After hearing the testimony of Mr. Sparks and Mr. Smallwood, the district court denied Mr. Sparks' motion to withdraw his guilty plea. The court noted that Mr. Sparks had the burden of establishing a fair and just reason for withdrawal. Applying the factors listed in United States v. Gordon, 4 F.3d 1567 (10th Cir. 1993), the court concluded that Mr. Sparks had not met his burden and denied his motion to withdraw his guilty plea. The court subsequently sentenced Mr. Sparks to 210 months' imprisonment. Mr. Sparks appeals both the denial of his motion to withdraw, as well as certain aspects of his sentence. We affirm.

**DISCUSSION**

**I. Denial of Motion to Withdraw Guilty Plea:**

Under Fed. R. Crim. P. 32(e), "[i]f a motion to withdraw a plea of guilty . . . is made before sentence is imposed, the court may permit the plea to be

withdrawn if the defendant shows any fair and just reason." See United States v. Black, 201 F.3d 1296, 1299 (10th Cir. 2000). "It is the defendant's burden to establish a 'fair and just reason' for the withdrawal of the plea." Id. (quoting Gordon, 4 F.3d at 1572). In Gordon, we set out the seven factors that courts should consider in determining whether to allow the withdrawal of a guilty plea:

> (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; [and] (7) whether the granting of the motion would cause a waste of judicial resources.

Black, 201 F.3d at 1299-30 (citing Gordon, 4 F.3d at 1572). Further, while "we engage in de novo review of the question of whether the plea was knowing and voluntary, we review the district court's denial of the motion to withdraw the guilty plea for an abuse of discretion, considering the seven factors outlined in Gordon." Id. at 1300 (further citations omitted). Finally, as the district court noted, while it is "within the sound discretion of the district court to determine what circumstances justify granting a motion to withdraw a guilty plea, such motions should be freely allowed, viewed with favor, treated with liberality, and given a great deal of latitude." United States v. Jones, 168 F.3d 1217, 1219 (10th Cir. 1999) (further quotation omitted).

The district court carefully and meticulously went through each Gordon factor, explaining why, considered together, they compelled the denial of

-11-

Mr. Sparks' motion. We cannot add anything more to that thoughtful analysis, other than to point out a few highlights. With respect to the first factor – whether Mr. Sparks has asserted his innocence – the court questioned Mr. Sparks' credibility and truthfulness in his assertions, at the hearing on his motion to withdraw, that he was innocent, in light of his previous admissions of guilt, including during the plea colloquy, and in light of his inability to provide any indicia of innocence other than his conclusory statements.

With respect to the third factor – whether Mr. Sparks delayed in filing the motion – the court noted that Mr. Sparks waited four months to file his motion, and case law indicates that a four-month delay militates against granting a motion to withdraw. Regarding the fifth factor – the quality of Mr. Sparks' assistance of counsel – the court stated that it found no indications that Mr. Smallwood's performance was inadequate, and observed that Mr. Sparks told the court during his plea colloquy that he was satisfied with Mr. Smallwood's representation. On the matter of the sixth factor – whether the plea was knowing and voluntary – the court questioned Mr. Sparks' credibility in his testimony that he was so emotionally distraught by the possibility of Ms. Oliveras's testimony that his plea was not knowing and voluntary, and further noted that the transcript gave no indication of such emotional trauma.

In sum, as the district court stated, "[i]n this case, the defendant clearly answered the questions posed by the Court [during the plea colloquy], gave no

suggestion that he was under any sort of duress or coercion. Were the Court now to find that these answers were now involuntary, such a ruling would render this Court's plea colloquy and the whole process meaningless." Tr. of Proceedings at 78, R. Vol. 2 at 121. We accordingly affirm the district court's denial of Mr. Sparks' motion to withdraw his guilty plea.[1]

## II. Sentencing Issues:

Following the denial of Mr. Sparks' motion to withdraw his guilty plea, the district court proceeded to sentencing. As indicated above, Mr. Sparks was sentenced to 210 months' imprisonment, based upon, *inter alia*, a finding that the drug quantity involved was 877 kilograms of marijuana, that Mr. Sparks was a leader/organizer of the conspiracy, and that he had obstructed justice when he paid Ms. Oliveras $5000 to keep quiet about the conspiracy. Mr. Sparks challenges each of those findings.[2]

---

[1]The fact that Mr. Sparks has a bachelor of arts degree in business administration from college further supports our conclusion that Mr. Sparks knowingly and voluntarily pled guilty. We have no doubt that he was able to comprehend the pleading materials presented to him.

[2]We now review all sentences under an abuse-of-discretion reasonableness standard. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Parker, 551 F.3d 1167, 1173 (10th Cir. 2008). Reasonableness encompasses both a procedural and a substantive component. Parker, 551 F.3d at 1173. A sentence is procedurally unreasonable if the advisory Guidelines sentencing range was not properly calculated. Id. Mr. Sparks' challenge is to the procedural reasonableness of his sentence.

At the sentencing hearing, Ms. Oliveras testified that she had lived with Mr. Sparks for five years in Pennsylvania. She further testified that she had traveled with Mr. Sparks to Florida, Texas, and Arizona and transported drugs on each trip. When she carried drugs in vehicles, they were hidden in big black duffle bags. Ms. Oliveras testified she could not recall how many times she had transported drugs because there were so many trips. She stated that the people who worked for Mr. Sparks included "Philly," "Lousy," "Smokey," "Gator," and Lorie Sparks, Mr. Sparks' sister.

Ms. Oliveras further testified that, after the DEA searched their house in Norristown, Pennsylvania, Mr. Sparks was on the run and told Ms. Oliveras not to say anything, in exchange for which he paid her $5,000. She also told of the times Mr. Sparks abused her physically and threatened her with harm.

Lorie Sparks then testified, describing the multiple trips she made to pick up drugs or deliver money for her brother, Mr. Sparks. In May of 2006, Lorie made three trips, all involving her driving to Houston to pick up a duffle bag of cocaine from a man named Gator, which she then took back to her home in Florida. Upon her return to Florida, Mr. Sparks came down from Philadelphia to pick up the drugs and pay Lorie $1500 for each trip. Mr. Sparks gave Lorie instructions on how to avoid police suspicion during these trips.

Lorie testified that she took multiple trips to Arizona to pick up large quantities – typically 520 pounds – of marijuana. On these trips, Mr. Sparks

introduced Lorie to a man named "Philly," who worked for Mr. Sparks. She described other trips in August, October, November and December of 2006, in which Lorie would drive to Houston to pick up duffle bags of cocaine or marijuana, at times delivering them to Smokey or Philly. She testified that on one occasion, she helped others bag cocaine in the basement of Mr. Sparks' house in Philadelphia.

In January and February of 2007, Lorie drove a big bag of money to Phoenix, where she met Mr. Sparks and Philly. In February, she picked up 520 pounds of marijuana and began driving it back to Florida. While driving through Oklahoma, Lorie was pulled over for a traffic violation, arrested, and agreed to help apprehend others by participating in a controlled delivery. Accordingly, Lorie delivered the marijuana to Mr. Sparks' house in Philadelphia, where Smokey unloaded it. At that time, police rushed in and arrested everyone, thereby putting an end to the conspiracy. In total, Lorie testified to taking at least three trips involving at least 500 pounds of marijuana per trip, as well as another trip involving "500-some-odd pounds." Tr. of Proceedings at 164, R. Vol. 2 at 121. She also testified to transporting three large duffle bags containing something less than the 500-pound loads.

The final person to testify at Mr. Sparks' sentencing hearing was James Wilcoxen, a Tulsa police officer and drug task force member. He corroborated some of Lorie's testimony by summarizing various telephone, airline, credit card,

and vehicle rental records which comported with her descriptions of trips she took for Mr. Sparks delivering drugs.

The district court found Mr. Sparks responsible for 877 kilograms of marijuana. The court noted that "[t]here's a likelihood that there were more drugs possessed, but that is a minimum amount that the Court finds." Id. at 192. Mr. Sparks challenges that calculation of drug quantity. "The district court's determination of drug quantity is a factual finding that must be supported by a preponderance of the evidence and is reviewed for clear error." United States v. Zapata, 546 F.3d 1179, 1192 (10th Cir.), cert. denied, 129 S. Ct. 772 (2008). "To be clearly erroneous, the finding must be simply not plausible or permissible in light of the entire record on appeal." Id. (further quotation omitted). Our review of the record indicates that there was ample evidence supporting the district court's drug quantity calculation. We accordingly find no error in that determination.

Mr. Sparks also challenges the district court's determination that Mr. Sparks was a leader/organizer and that he obstructed justice by paying Ms. Oliveras to keep quiet. Our review of the record demonstrates that the district court committed no error in those determinations. We conclude that Mr. Sparks' sentence was reasonable.

-16-

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge